UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MIGUEL PEREZ, et al.,

    Plaintiffs,

v.

CASE No. 8:01-CV-0069-T-27MSS

PAVEX CORPORATION, a Florida corporation,

    Defendant.

___

### DEFENDANT PAVEX CORPORATION'S MOTION TO DISMISS PLAINTIFFS L. ABRAHANTES, A. LLUBERES AND F. MARTINEZ FOR LACK OF SUBJECT MATTER JURISDICTION UNDER 42 U.S.C. §1981, OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 12(b)(1), 12(d) and 12(h)(3), Defendant Pavex Corporation ("Pavex") moves for entry of an Order dismissing with prejudice Plaintiffs Luis Abrahantes ("Abrahantes"), Alejandro Lluberes ("Lluberes") and Felix Martinez ("Martinez") on the grounds that this Court lacks subject matter jurisdiction over their claims because these plaintiffs lack standing to sue under 42 U.S.C. § 1981 (the sole basis for their claims).

In the alternative, Pavex is entitled to dismissal of these plaintiffs' claims on the grounds that the Amended Complaint as to these plaintiffs fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and pursuant to Fed. R. Civ. P. 56 on the grounds that the pleadings, together with the deposition testimony, affidavits and exhibits submitted herewith, show that there is no genuine issue of material fact as to any of these three plaintiffs' claims for race or ancestry discrimination under §1981 as reflected by the following grounds and material facts, which are undisputed for the purposes of this motion (*see* Index of Documents

Supporting Motion for Summary Judgment) and which are stated with particularity in compliance with Fed. R. Civ P. 7(b) as follows:

**The legal grounds supporting this Motion are:**

1. This is a 26-plaintiff case alleging ***highly individualized*** claims alleging widely different claims under 42 U.S.C. §1981. Twelve (12) plaintiffs are former Pavex employees asserting claims based on their race, African-American. Two plaintiffs are former employees of Pavex alleging discrimination and harassment because of their Hispanic ancestry. Four (4) plaintiffs are white former employees of Pavex who allege that they were harassed and discriminated against because of their association with blacks or Hispanics. Some of these plaintiffs further allege they were retaliated against for a variety of reasons. Eight (8) of the 26 plaintiffs were never employed by Pavex and instead worked for trucking companies that made deliveries to or hauled materials for Pavex.[1]

2. Plaintiffs Abrahantes, Lluberes and Martinez are in the last category and made deliveries of asphalt to various Pavex worksites. They all admit they were never employed by Pavex.[2]

3. To have standing to sue under §1981, a plaintiff must have a <u>contractual</u> relationship with the defendant, and it is well-established that those who have no contractual or employment relationship with a defendant have no standing to sue under §1981. ***Plaintiffs Abrahantes, Lluberes and Martinez were never employed by Pavex and have no contracts with***

---

[1] Plaintiffs Narcisco Perez, Diosdado Perez, Isbel Perez, Rafael Perez and Alejandro Vasquez-Falero also were outside drivers and not employed by Pavex, they were employed by different companies, only hauled aggregate, have entirely different claims against Pavex occurring solely in 1998, and about a totally different alleged harasser (Tony Hill) than Plaintiffs here. Accordingly, Pavex has addressed their claims by separate Motion.

[2] Although Martinez claims in the Amended Complaint that he was employed by Pavex in 1999, he admits in his deposition testimony that he was never employed by Pavex (Martinez at 60). It is undisputed that Plaintiffs Abrahantes, Lluberes and Martinez were never Pavex employees.

2

***Pavex whatsoever***. Instead, they delivered asphalt to Pavex and numerous other companies' worksites on an as-needed basis while driving under leasing contracts between themselves and various outside trucking companies not affiliated with Pavex.

4.  The outside trucking companies for whom these plaintiffs hauled asphalt to Pavex worksites and other non-Pavex worksites also have no contractual relationships with Pavex and are not parties to this lawsuit.

5.  To the extent these plaintiffs claim they were somehow "jointly employed" by Pavex, there is no evidence in the record of the indicia required by established law to confer joint employment status on these plaintiffs whatsoever. Instead, these plaintiffs (a) sporadically delivered asphalt to Pavex worksites; (b) made deliveries to numerous non-Pavex worksites, (c) used only their own equipment (their trucks) and (d) were paid by the outside trucking companies for whom they made deliveries, not Pavex.

6.  Without an employment or contractual relationship between these plaintiffs and Pavex, these plaintiffs have no standing to sue Pavex under 42 U.S.C. § 1981, and this Court lacks subject matter jurisdiction over the claims of these three (3) plaintiffs.

7.  In addition to that these plaintiffs lack standing to sue under §1981 and their claims should be dismissed with prejudice *on that basis alone,* should this Court confer jurisdiction upon these plaintiffs, Pavex is entitled to summary judgment upon all of these plaintiffs' claims because the harassment about which they complain was not sufficiently severe and pervasive to form an actionable claim for racial harassment.

8.  Defendant has raised both plaintiffs' lack of standing and plaintiffs' failure to state a claim in its Answer (Defendant's Eighth and Ninth Affirmative Defenses). Rule 12(d) provides for the defenses to be heard and determined before trial upon the application of a party.

**Undisputed Material Facts Supporting this Motion:**

**Pavex and its Bartow Facility**

1. Defendant Pavex is a paving company whose locations include a facility in Bartow, Florida (Amended Complaint ¶¶ 1, 13; Turner Aff. ¶ 3).

2. At the Bartow facility, there is a plant, which is the machine and operations where the asphalt for Pavex' paving jobs is made and stored; a shop, where some of Pavex' equipment and vehicles are maintained; and three trailers that contain barebones offices and an office for quality control of asphalt (G. Monek at 42-43 and 83-98, Ex. 2; M. Perez 59-60; Turner Aff. ¶ 3).

3. The bulk of Pavex' Bartow operations are not performed on-site but instead are performed off-site by its grading and paving crews[3] (Monek at 57).

4. When the Bartow plant makes asphalt, typically the Plant Operator or the Plant Superintendent informs Pavex' Dispatcher how many additional dump trucks will need to be ordered to haul the asphalt to the worksites for the paving projects planned for the next day (Turner Aff. ¶ 4).

5. The Dispatcher then schedules Pavex dump trucks to haul and dump the asphalt and contacts outside trucking companies to provide any additional dump trucks needed for the next day (Turner Aff. ¶ 5). First, the Dispatcher schedules Pavex employee drivers who use Pavex trucks (Turner Aff. ¶ 5). If more trucks are needed, the Dispatcher then contacts a

---

[3] While Plaintiffs' Amended Complaint alludes that these plaintiffs brought their claims in one suit because their wildly different claims form *one* environment, a cursory reading of their depositions shows that these plaintiffs should never have been joined in one lawsuit and to do so was simply an attempt to gain an advantage in this case using large numbers of plaintiffs rather than related claims. The bulk of these plaintiffs claims have no relationship to each other whatsoever as Pavex will show in its motions for summary judgment and motions to sever.

4

trucking company called Soil-Tech who sends five Soil Tech[4] trucks that are regularly assigned to Pavex, but whose drivers are not employed by Pavex (Turner Aff. ¶ 5). Plaintiffs admit that of the five (5) drivers that Soil Tech regularly uses for its Pavex hauling, four (4) are Hispanic (Abrahantes at 160).

6. If still more trucks are needed for hauling asphalt, the Dispatcher then calls other nonaffiliated trucking companies such as J & I Trucking, Inc., Margie Wood Trucking, Inc., Patco Transport/Montgomery Truck Lines and Rinker Materials Corporation to send trucks with drivers who have an asphalt tarp and experience hauling asphalt (Turner Aff. ¶ 5). Pavex does not control (or even know) whether the trucks sent by those outside companies are owned by the companies or are trucks leased by those companies from independent contractor owner/operators (Turner Aff. ¶ 5). Pavex simply pays the trucking companies for however many hours their trucks and drivers deliver that day (Turner Aff. ¶ 7).

7. Pavex has no contract with any of these trucking companies nor with any independent contractor/truckers they might use to haul asphalt for Pavex (Monek at 132; Turner Aff. ¶ 10).

8. It is undisputed that Pavex exercises no control over which trucks or drivers are sent by these various trucking companies to haul asphalt to Pavex worksites (Monek p. 137; Turner Aff. ¶¶ 5, 10). Pavex simply maintains a list of approved outside trucking companies that can deliver asphalt and calls them the day before the asphalt hauls are needed to find out if they are interested and can do the hauling the next day (Turner Aff. ¶ 5; Monek at 103-104 and 133-136).

---

[4] Soil Tech is not affiliated with Pavex and does not have a contract with Pavex, and the drivers of the Soil Tech trucks are not employed by or paid by Pavex (Turner Aff. ¶¶ 5, 9, 10).

9. The independent contract drivers or owner/operators sent to Pavex by these outside trucking companies, as well as the trucking companies for whom they do hauling, haul to and from numerous other companies besides Pavex (Abrahantes at 65; Lluberes at 96; Martinez at 94).

**Plaintiffs Admit They Were Not Employed in Any Way by Pavex**

10. Again, the three plaintiffs here do not claim to be employed by Pavex (Amended Complaint ¶¶ 110 and 131). They admit they have never been employed by Pavex (Abrahantes at 59; Lluberes at 232; Martinez at 60).

11. Plaintiffs Abrahantes and Lluberes owned their own dump trucks and were self-employed (Abrahantes at 29; Lluberes at 41-42). Plaintiff Martinez worked for Abrahantes and drove Abrahantes' dump truck (Martinez at 77, 80).

12. During the time these plaintiffs allege they were harassed at Pavex, plaintiffs testify only that they hauled asphalt from Pavex' plant to various Pavex worksites after taking assignments offered to them by outside trucking companies, including J & I Trucking, Inc., Margie Wood Trucking, Inc., Patco Transport/Montgomery Truck Lines and Rinker Materials Corporation, the previous day (Abrahantes at 25, 46 and 47; Lluberes at 44 and 96; Martinez at 79 and 80).

13. Plaintiffs hauled asphalt to Pavex worksites only when they chose to take the assignments from the trucking companies; plaintiffs admit they did not have to take the assignments and that they hauled for numerous companies and to numerous other companies besides Pavex. (Abrahantes at 47, 50-51, 65-66; Lluberes at 40-41, 59-60, 62-63, 97).

14. When delivering asphalt to Pavex worksites, plaintiffs' only job was to dump the asphalt they picked up at the plant into the paver[5] at the worksite (Abrahantes at 135; Lluberes at 94-95; Martinez at 90, 140). Even if plaintiffs spilled asphalt on the ground at the worksite, plaintiffs did not have to get out of their trucks to pick up the spilt asphalt because that was not their job (Lluberes at 95; Martinez at 170). In fact, Lluberes testified that he would not get out of his truck at any worksite because his insurance did not cover him for anything that happened outside of his truck (Lluberes at 94-95).

15. Plaintiffs admit they used only their own equipment (their trucks) to make deliveries and to dump the asphalt (Abrahantes at 65, 67; Lluberes at 180). Plaintiffs never operated the paver, the machine into which they dumped the asphalt, itself, or any other Pavex equipment (Lluberes at 94). Plaintiffs knew only where they needed to place their trucks to dump the asphalt into the Paver and their only task at Pavex was to have the asphalt dumped into their truck at the Plant and to drive their trucks to the job site to dump the asphalt into the paver (Lluberes at 174, 176). Plaintiffs claim to speak little or no English and admit that they took little or no direction (besides signals to ensure they backed their trucks up in the right direction) from any employee of Pavex to perform the hauls (Abrahantes at 5, 46, 51-52, 67, 97-98; Lluberes at 4, 42; Martinez at 5).

16. Plaintiffs were paid by the trucking companies from whom they took assignments; they were not paid by Pavex (Abrahantes at 46; Lluberes at 139; Martinez at 81).

---

[5] A Paver is a piece of heavy equipment which is used to lay down asphalt (Monek at 57).

7

**Plaintiffs' Claims of Harassment by Terry Overcash**

17.     The only claim these three plaintiffs allege is that they were harassed by a Pavex Paving Foreman named Terry Overcash.[6] (Amended Complaint ¶¶ 122, 125, 126, 146).

18.     **Isolated Name-Calling by Overcash:** Plaintiffs testify that Pavex Paving Foreman Overcash was disrespectful and unpleasant to them on two to four occasions when they dumped asphalt at Pavex worksites from 1999 to 2000[7] (Abrahantes at 127-129, 131, 134; Lluberes at 71-73, 162-163, 170, 222; Martinez at 113-114, 119-120, 126-128, 141-143). They claim Overcash yelled at them and threw his hard hat down when he thought that plaintiffs were about to do something wrong, and cursed at them when they made mistakes[8] (Abrahantes at 127-129, 131, 134; Lluberes at 71-73, 162-163, 170; Martinez at 113-114, 115, 119-120, 126-128, 141-143). Plaintiffs claim that Overcash sometimes cursed at them when they spilled asphalt on the ground instead of into the paver or if it appeared to Overcash that they were backing their trucks in the wrong direction to properly load the paver by saying "motherfuckers" or "fucking

---

[6] Plaintiff Abrahantes claims that a driver named "Charlie" made disrespectful comments to other Hispanics, although he admits that "Charlie" never directed any comments toward him (Abrahantes at 143). Plaintiff Abrahantes also alleges that another driver named "Kathy" would say "stupid, fucking Cuban" when she thought a driver was not going to stop backing up the truck in time (Abrahantes at 143-144).

[7] Plaintiffs' apparent inability or refusal to clearly testify to how many times Overcash allegedly made inappropriate remarks directed at them, makes it impossible to determine exactly how many times Overcash allegedly made inappropriate remarks directed at these plaintiffs. For example, although Abrahantes testifies that he had "problems" every time Overcash came to his truck (Abrahantes at 131), Abrahantes admits that every time Overcash saw Abrahantes' truck after an incident where Overcash jumped on the ledge of Abrahantes' truck, Overcash would not talk to him and simply sent Abrahantes home (Abrahantes at 128). Despite these plaintiffs' contradictory testimony and inability or refusal to affirmatively state how many times Overcash allegedly made inappropriate remarks directed at plaintiffs, plaintiffs testimony that, because they made deliveries to Pavex worksites sporadically and did not always deal with Overcash, and adding up the times they refer to indicates that and, at most, sporadically. Overcash allegedly directed inappropriate at plaintiffs on two to four occasions (Abrahantes at 127-129, 131, 134; Lluberes at 71-73, 162-163, 170, 222; Martinez at 113-114, 119-120, 126-128, 141-143).

[8] Although Plaintiff Abrahantes claims in the Amended Complaint that Tom Glor made "racially hostile remarks to plaintiff," Abrahantes admits in his deposition that he does not know Glor. (Abrahantes at 93, 94-95).

8

Cuban" or "fucking Hispanic people or "son of a bitch" or by calling them "stupid" (Abrahantes at 127-129, 131, 134-136; Lluberes at 71-73, 162-163, 170; Martinez at 113-114, 119-120, 126-128, 141-143). Although they claim to understand virtually no English, plaintiffs claim that they understand these words in English[9] (Lluberes at 165-166; Martinez at 113-114, 124).

19. Plaintiffs Abrahantes and Martinez are Cuban immigrants and Lluberes is Dominican[10] (Abrahantes at 5 and 17; Lluberes at 4 and 30; Martinez at 5, 23). Throughout their depositions, all three plaintiffs constantly refer to other independent contractor drivers and Pavex employees almost exclusively by their nationality, describing them as "that Mexican," "the Cuban" and "the Americans" (Abrahantes at 30, 39; Lluberes 69, 80 and 81; Martinez at 153, 181)

20. **Plaintiff Lluberes Claims Overcash also once Challenged Him to a Fight**— Plaintiff Lluberes also testifies that once when Lluberes spilled asphalt and refused to get out of his truck to help shovel it up, Overcash took a shovel from Lluberes' truck and asked Lluberes to get down from his truck and fight him (Lluberes at 180-181). Although Lluberes alleges that at the time he took it as Overcash asking Lluberes to fight him, Lluberes admits (and Plaintiff Martinez confirms) that Overcash actually asked Lluberes to get down from his truck to help shovel up the spilt asphalt (Lluberes at 171-172, 233; Martinez at 175-176). Lluberes refused to help shovel up the spilt asphalt because he did like the way Overcash asked him to help and because his insurance did not cover him when he gets out of the truck (Lluberes at 171-172). He

---

[9] Although Plaintiff Martinez claims in the Amended Complaint that Overcash's discriminatory conduct included calling Martinez "illiterate" and "inbred," Martinez admits that he does not know the meaning of either word (Martinez at 192).

[10] Lluberes alleges that he told Overcash that he was not "Cuban," he was "Dominican," and Overcash allegedly responded: "that is the same shit" (Lluberes at 171).

9

admits that although he thought Overcash wanted to fight him on that occasion, Overcash never touched him (Lluberes at 171).

21. **Plaintiff Abrahantes' Claim of Discrimination that Overcash Told Plaintiff Abrahantes That His Truck Was Not Needed for the Whole Day on a Few Occasions but Overcash Continued to Use the Hispanic Soil Tech Drivers For the Whole Day** — Plaintiff Abrahantes alleges that Overcash sent his truck home early on four or five occasions because Abrahantes is Hispanic (Abrahantes at 138). When Abrahantes' truck was no longer needed because there were too many trucks at the worksite that day, Abrahantes testifies that six (6) trucks would typically remain at the worksite (Abrahantes at 138). Four (4) of the remaining six (6) trucks were those of the non-Pavex employee Hispanic drivers from Soil-Tech (Abrahantes at 138-139). Additionally, when Overcash would attempt to send Abrahantes home early, Plant Operator Mike Perez on three (3) to five (5) occasions assigned Abrahantes to another crew so that Abrahantes would not have to go home (Abrahantes at 86-87).

22. It is undisputed that occasionally, work in the field or at the plant is cut off for various reasons, which reduces or eliminates the need for asphalt to be hauled for the remainder of that day (Turner Aff. ¶ 9). When this happens, the paving foreman typically informs the outside asphalt truck drivers that they are no longer needed on the Pavex worksite that day (Turner Aff. ¶ 9). There are various reasons why this might happen, including if the plant breaks down, the inspector tells the foreman they cannot put more asphalt down that day on a site, it rains, or no more asphalt is needed that day (Turner Aff. ¶ 9). Many times, the fact that work is cut off early is out of the control of the foremen (for example, for bad weather or if the plant breaks down) (Turner Aff. ¶ 9; Overcash Vol. 2 at 26-27, 98). Asphalt drivers are aware

that there is no guarantee with this work and that paving work is not dependable (Turner Aff. ¶ 9).

23. **Plaintiffs Claim that Pavex Drivers would Pass Them on the Highway "Making Them Look Bad"**—Plaintiffs claim they would get into trouble with the "boss" Mike Perez (Hispanic), who was the Plant Operator and not a Pavex supervisor or manager, when Pavex drivers would arrive at Pavex' paving job sites before plaintiffs after passing plaintiffs on the highway (Abrahantes at 144; Lluberes at 198-199). Plaintiffs allege that when the Pavex employee drivers arrived at the job site before them, it made it seem like plaintiffs were not performing their hauls in a timely fashion (Abrahantes at 144). However, while these plaintiffs speculate that they were judged poorly for their speed in hauling by Pavex, they admit that such alleged perception never manifested itself in any action by Pavex[11] (Martinez at 198).

24. **Overcash Once Rejected a Load of Asphalt Hauled by Plaintiff Martinez**— On one occasion, an independent trucking company deducted around $600.00 from Abrahantes' wages after Overcash rejected a load of asphalt Martinez hauled in Abrahantes' truck (Abrahantes at 150-151, 159). Asphalt generally must be loaded into trucks to arrive on the job site at a certain temperature or it might cool and become useless (Monek at 78; Andre at 30-32). Abrahantes does not know why Overcash rejected the load (Abrahantes at 159). However, Martinez speculates that Overcash rejected the load of asphalt because the paver, into which the asphalt was poured, needed to be fixed (Martinez at 147-148).

25. **Plaintiff Abrahantes Admits that Pavex Continually Used non-employee Hispanic drivers from Outside Trucking Companies to Haul Asphalt, Including Abrahantes until Declined Assignments Because His Heart Problem Now Precludes Him**

---

[11] Plaintiffs were merely asked once why they were driving so slowly after a Pavex driver complained about their driving (Lluberes at 198).

11

**From Working**--Plaintiff Abrahantes alleges that he and a "group of drivers" complained to an independent trucking dispatcher in Tampa (not affiliated with Pavex) regarding Overcash's behavior and after they complained, the dispatcher no longer sent the drivers to Pavex (Abrahantes at 159-160).

26. Although Abrahantes speculates that Pavex no longer wanted Hispanic, Abrahantes admits that Pavex continued to regularly use the four (4) Hispanic Soil Tech drivers to haul asphalt (Abrahantes at 160, 161, 165). In fact, Abrahantes made deliveries for Pavex until at least May 2000 and made deliveries for other asphalt companies as well until Abrahantes had an accident changing a tire on the side of the road in December 2000 that resulted in a collapsed lung and heart problems (Abrahantes at 28, 161-164). As a result of Abrahantes' accident, Abrahantes cannot work (Abrahantes at 28).

27. **Plaintiff Lluberes Continued to haul to Pavex and other companies' worksites after Complaining that He Could No Longer Work with Overcash and Pavex' Plant Operator Remedying the Situation**--After having difficultly working with Overcash and deciding that he could no longer work with Overcash, Lluberes explained the situation to the Plant Superintendent at Pavex (Lluberes at 80-83). After listening to Lluberes' complaints about Overcash, the Plant Superintendent wrote on Lluberes' ticket that he no longer had to work with Overcash's crew (Lluberes at 80-83, 87-89).

28. After complaining about Overcash and telling the Plant Superintendent that he could no longer work with Overcash, Lluberes continued to make deliveries to Pavex worksites, making deliveries to Pavex worksites on at least two separate occasions (Lluberes at 87, 93-94). In fact, Lluberes continued to work despite allegedly having a stroke that resulted in the loss of

vision in his right eye a few days after an altercation with Overcash and made deliveries for other companies until his doctor recommended that he not drive (Lluberes at 12, 17, 133).

29.     **Martinez Delivered Asphalt to Pavex and Other Companies until He Left the Area to Work the Sugar Cane Harvest**—The last day Martinez delivered asphalt for Pavex, which was sometime in July 2000, Martinez claims that a "Mexican" translated for him an instruction from Overcash that he was supposed to leave the worksite and head back to the Pavex Plant (Martinez at 99,153). Martinez claims he heard that the independent trucking company he was working for was told that Pavex did not want anymore Hispanics, but admits that he does not know whether Pavex actually told the trucking company that it did not want anymore Hispanics or not (Martinez at 153). Although Martinez claims he did not make any more deliveries to Pavex, Martinez continued to make deliveries for the trucking company until he left the area in 2000 to work the sugar cane harvest (Martinez at 153). Martinez never complained to Pavex about any allegation of harassment (Martinez at 138).

For all of the foregoing reasons, Defendant Pavex, Inc., respectfully requests that this court enter an order dismissing with prejudice the asphalt driver plaintiffs Luis Abrahantes, Alejandro Lluberes and Luis Martinez , and award to Pavex its costs of action and such other relief as this court deems proper.

Respectfully submitted,

By: _/s/ Tracey Jaensch_
Tracey K. Jaensch (Fla. Bar No. 907057)

FORD & HARRISON LLP
101 E. Kennedy Boulevard, Suite 900
Tampa, FL 33602-5133
(813) 261-7800

Attorneys for Defendant Pavex Corporation, Inc.

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a copy of the foregoing Defendant's Pavex Corporation's Motion to Dismiss Plaintiffs L. Abrahantes, A. Lluberes and F. Martinez for Lack of Subject Matter Jurisdiction Under 42 U.S.C. §1981, or, In The Alternative, Motion for Summary Judgment was served to the following via U.S. Mail, on the 29th day of July, 2002:

Peter F. Helwig
Harris & Helwig, P.A.
6700 South Florida Avenue
Suite 31
Lakeland, Florida 33813

Jack Scarola
Searcy, Denney, Scarola, Barnhardt & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33402

_/s/ Tracey K. Jaensch_
Tracey K. Jaensch

TAMPA 158253 1

14