UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MIGUEL PEREZ; *et al.*,
*(Carlos Clem)*

                **Plaintiffs,**

vs.                                           **Case No. 8:01-CV-69-T-27MSS**

**PAVEX CORPORATION,**

                **Defendant.**

_____/

## ORDER

**BEFORE THE COURT** is Pavex's Renewed Motion for Summary Judgment as to Plaintiff

Carlos Clem (Dkt. 280) and Carlos Clem's Substituted Memorandum in Opposition (Dkt. 293).

Plaintiff Carlos Clem initiated this action against Defendant Pavex Corporation alleging he was

subjected to a hostile work environment and discharged based on his race as part of a pattern or

practice of discrimination in violation of 42 U.S.C. § 1981. (Dkts. 114, 212). Plaintiff also asserts

a claim for intentional infliction of emotional distress. (Dkt. 212). Upon consideration, Defendant's

Renewed Motion as to Plaintiff's individual claims is **GRANTED** in part and **DENIED** in part.

Defendant's Renewed Motion is **GRANTED** as to Plaintiff's hostile work environment and

intentional infliction of emotional distress claims. The motion is **DENIED** as to Plaintiff's

discriminatory discharge claim.

## Factual Background

Plaintiff, an African American, was hired by Tom Glor as a Laborer on February 19, 1999.

(Clem Depo., pp. 36, 40, 41). The pay scale at the time Plaintiff was hired was $6.75 to $9.25 per

1

hour. (Monek Depo., Ex. 3). Plaintiff was hired at $9.50 per hour. (Clem Depo., pp. 40-41). Four

months later, on June 21, 1999, Plaintiff resigned for personal reasons. (Clem Depo., pp. 49, 66, 67).

On March 27, 2000, Glor re-hired Plaintiff as a Lute Man at $10.50 per hour. (Clem Depo.,

pp. 71-73). Plaintiff was paid more than other employees with more experience. (Clem Depo., pp.

30-31, 73-74). Paving Foreman Terry Overcash was Plaintiff's supervisor. (Clem Depo., p. 36).

One day, Plaintiff had his feet up in his truck while on the job and Overcash told Plaintiff, "you can

get your ass off my job." (Clem Depo., p. 51). Plaintiff responded, "how am I going to get home

Terry?" and Overcash replied, "I don't give a fuck how you get home." (Clem Depo., p. 51).

According to Plaintiff, Overcash thought he had fired Plaintiff. (Clem Depo., p. 51-2). However,

Glor told Plaintiff's step father, Emanuel Walker, to tell Plaintiff to come back to work the next day.

(Clem Depo., p. 52). When Plaintiff returned to work, he and Walker were assigned to Foreman

Tim Weaver's crew. (Clem Depo., p. 52). Plaintiff enjoyed working for Weaver and felt Weaver

treated him fairly. (Clem Depo., p. 59).

Plaintiff did not have any other problems with Overcash, although Overcash once told him

to move "because if the asphalt hits you, we ain't going to be able to see it on you." (Clem Depo.,

pp. 105-106). Plaintiff also heard Overcash use the term "stupid ass spic" toward a Hispanic

employee. (Clem Depo., pp. 76, 99)

According to Plaintiff, Glor frequently used foul language, such as "Jesus fucking Christ,"

"motherfucker," and "you stupid motherfucker." (Clem Depo., pp. 76, 120). On one occasion, Glor

and Plaintiff exchanged curse words after Plaintiff rolled the asphalt incorrectly. Glor said "you

stupid motherfucker. What are you doing? You only roll once." (Clem Depo., p. 75). In response,

Plaintiff called Glor a "stupid motherfucker." (Clem Depo., p. 75). In response, Glor threw his hat

2

down the hill and made a Caucasian employee retrieve it. (Clem Depo., pp. 75-76). Plaintiff heard Glor refer to Hispanic workers as "stupid ass spics" or "stupid Mexicans." However, Glor never directed racial slurs toward Plaintiff. (Clem Depo., pp. 76, 120).

Plaintiff testified that he never heard supervisors Weaver or Glor make "nigger" jokes. (Clem Depo., pp. 59, 100, 118, 120). However, "Drew and Terry [Overcash]" would tell "nigger jokes" "amongst themselves," but would not say anything derogatory toward Plaintiff. (Clem Depo., p. 100). According to Plaintiff, he did not "really feel [he] was discriminated because they didn't mess with [him]. . . . – the little comments they made or whatever, you know, they wouldn't make them towards [him]." (Clem Depo., p. 99).

Shop Foreman Mike Mooney made Plaintiff feel like Plaintiff "was going to steal something" whenever Plaintiff entered the parts room in the mechanics shop. (Clem Depo., pp. 10-11). Mooney would not let Plaintiff go into the parts room and would lock the doors if he walked into the shop. (Clem Depo., pp. 103-104). According to Plaintiff, Mooney treated Caucasian employee "Drew" differently, but Plaintiff would "just laugh at it and let it go." (Clem Depo., pp. 103-4). Plaintiff did not know whether Mooney knew about Plaintiff's criminal background. (Clem Depo., p. 103). According to Mooney, only shop personnel were permitted in the parts room and there was a sign on the door of the parts room indicating that only authorized personnel were permitted. (Mooney Depo., pp. 78-80).

While working at Pavex, Plaintiff never complained to management about Mooney's treatment, the cursing, or any other alleged discrimination. (Clem Depo., pp. 104-5, 107). On July 31, 2000, Plaintiff was terminated because of "lack of work." (Clem Depo., pp. 64, 79; Dkt. 81, Index 9). Prior to Plaintiff's termination, Plaintiff and other workers, both African American and

3

Caucasian, were having a hard time getting forty hours a week because paving work at Pavex had slowed. (Clem Depo., pp. 44, 46, 64-5). At about the same time, Pavex decided to consolidate the Bartow and Orlando operations as a result of a lack of paving jobs in Bartow. (Monek Depo., pp. 26, 217). Plaintiff was terminated the same day that Emmanuel Walker and Paul Palmer, two workers on Weaver's crew, resigned to take other construction jobs. (Stanley Dec., ¶ 3). According to Walker, Glor told Weaver that if Walker and Palmer quit, Weaver's crew "was through." (Walker Depo., p. 159). According to Pavex's Vice President of Administration, Barry Stanley, Plaintiff and the two other African American employees terminated that day were the least senior employees on Weaver's crew. (Stanley Dec., ¶ 3). Defendant retained two African American employees (Cliff Riley and John Phillips) and one Caucasian employee (Ronald Vinson) from Weaver's crew. (Stanley Dec., ¶ 3).

According to Plaintiff, he was terminated by Glor because of his race. Overcash testified that at some point, Glor told him that he noticed "some people weren't working" and that he was going to have to "cut some fat." (Overcash Depo., p. 147). Overcash did not recall Glor using the term "nigger" on the work site, yet believed Glor said something like he needed "to get rid of some of these niggers." (Overcash Depo., p. 147). African American employee Angria Walker heard Glor say he needed to "lay some of them niggers off." (A. Walker Depo., pp. 162-65).[1] According to Walker, Glor made the comment to Overcash while the two men were on the "running track" at "Lake Gibson High School." (A. Walker Depo., p. 164). Walker believed the comment was made by Glor sometime in June or July of 2000. (A. Walker Depo., pp. 164-65, 169). Overcash's log book indicates that the crew was on the Lake Gibson job from July 26-31, 2000. (Dkt. 121, Index, 4).

---

[1] Walker testified that Glor said he needed to "lay some of these guys off" and then later during his deposition clarified that Glor actually said "[h]e's going to lay some of them niggers off." (A. Walker Depo., pp. 163-4).

## Summary Judgment Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed. R. Civ. P. 56. The Court must view all evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

## Discussion

### 1.    Hostile Work Environment

To establish a hostile work environment claim, Plaintiff must establish that (1) he is a member of a protected group, (2) he has been subjected to unwelcome harassment, (3) the harassment was based on his protected classification, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment, and (5) Defendant is responsible for such environment under either a theory of vicarious or direct liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir.

2002); *see also Gupta v. Florida Board of Regents*, 212 F. 3d 571, 583 (11th Cir. 2000).[2]

Although the cursing and racial comments about which Plaintiff complains were offensive, Plaintiff has not presented evidence that the conduct was sufficiently severe or pervasive to alter the terms or conditions of his employment.[3]   In determining whether harassment is sufficiently severe or pervasive to alter the terms and conditions of employment, both an objective and subjective test must be met. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). A plaintiff must establish not only that he subjectively perceived the environment as hostile and abusive but also that a reasonable person would perceive the environment as hostile and abusive, considering the totality of the circumstances. *Gupta*, 212 F. 3d at 583. The Supreme Court has identified several factors relevant to whether a work environment is hostile or abusive, including (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating or a mere offensive utterance; and (4) whether it unreasonably interferes with the employee's work performance. *Harris,* 510 U.S. at 23. In addition, courts are to consider the social context in which the conduct occurred in an effort to distinguish between innocuous behavior and severe and pervasive harassment. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998).

Here, the evidence demonstrates that the majority of curse words and foul language were directed at everyone regardless of race. While the use of curse words, such as "get your ass off my job," "motherfucker," and "stupid motherfucker," by supervisors is inappropriate, it does not

---

[2] Cases analyzing the requirements of a hostile work environment claim under Title VII are relevant and persuasive in this case, as "both [ ]statutes [§ 1981 and Title VII] have the same requirements of proof and use the same analytical framework." *Shields v. Fort James Corporation*, 305 F.3d 1280, 1282 (11th Cir. 2002).

[3] Nothing in the record suggests that Plaintiff knew that Glor said Pavex needed to "lay some of them niggers off." Walker testified that he did not believe anyone else heard the comment. Evidence of racially hostile incidents not known to Plaintiff during his employment will not support his hostile work environment claim. *See Edwards v. Wallace Comm. College,* 49 F.3d 1517, 1522 (11th Cir. 1995).

demonstrate racial animus towards Plaintiff's protected class. *See Brown v. Henderson*, 257 F.3d 246, 254 (2d Cir. 2001) (the fact that all employees are treated badly suggests that their mistreatment shared a common cause that was unrelated to their protected status). Section 1981 does not protect employees against nondiscriminating intimidation by bullish and abusive supervisors. *See Oncale,* 523 U.S. at 81 ("Title VII is not a 'general civility code'").

The racially charged incidents Plaintiff testified to, while offensive and reprehensible, are not sufficiently severe to withstand summary judgment. Plaintiff testified that he never heard supervisors Weaver or Glor make "nigger jokes." Rather, Plaintiff testified that "Drew and Terry [Overcash] would joke "amongst themselves," but did not direct derogatory comments toward Plaintiff. (Clem Depo., pp. 100). While a plaintiff *could* have a viable hostile environment claim even if racial remarks were not directed at him, in this case, Plaintiff testified that the "little comments" did not bother him and that he did not feel discriminated against because generally, "they" did not "mess with [him]."[4]

To be actionable, "[t]he employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms and conditions of employment. . . ." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (quotation and citation omitted). The record evidence does not support a finding that Plaintiff subjectively believed the harassment was sufficiently severe or pervasive. Nor does it support a finding that the terms and conditions of Plaintiff's employment were altered by the harassment.[5]

---

[4] Plaintiff testified that he did not "really feel [he] was discriminated [against] because they didn't mess with [him] . . . - the little comments they made or whatever, you know they wouldn't make them towards [him]." (Clem Depo., p. 99).

[5] Notably, when Overcash reprimanded Plaintiff for having his feet up on the job, he cursed at Plaintiff, but did not use a racial slur. (Clem Depo., p. 51). Plaintiff testified that while Overcash may have thought he fired Plaintiff, Plaintiff was permitted to come back to work the next day and was re-assigned to Weaver's crew. (Clem Depo., p. 52).

Overcash's comment about not being able to see the asphalt on Plaintiff, while more severe than the other racial comments, did not alone, or in combination with the other alleged incidents, alter the conditions of Plaintiff's employment. *See Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir. 1995) (quoting *EEOC v. Beverage Canners, Inc.*, 897 F.2d 1067, 1068 (11th Cir. 1990)) (to be actionable, racial slurs must be "so commonplace, overt and denigrating that they create[ ] an atmosphere charged with racial hostility"). Significantly, the evidence does not suggest that Overcash made the comment in an intimidating or threatening manner or directed it toward Plaintiff in connection with Plaintiff's job performance. This distinguishes Plaintiff's hostile work environment claim from the facts supporting the hostile work environment claims brought by other plaintiffs in this case, such as Patricia Ford.[6]

While racial jokes are particularly offensive when uttered by supervisors, not every racially charged comment by a supervisor is actionable. *See e.g. Barrow v. Georgia Pacific Corp.*, 2005 WL 1926420 *3 (11th Cir. 2005) (holding that racial symbols and slurs, including the presence of rebel flags and the letters "KKK" in the workplace, in addition to several other comments by supervisors and management referring to plaintiff as "nigger" and "boy," did not constitute "sufficiently severe or pervasive" harassment to alter the conditions of plaintiff's employment);[7] *see also Smith v. Beverly Health and Rehab. Serv., Inc.*, 978 F. Supp. 1116, 1122 (N.D. Ga.1997) (supervisor's comments that "all that mooly can do is make coffee and bring it to me," "these goddamn Georgia niggers think they own Georgia," and "where I come from niggers knew their place" did not rise to the level of severe and pervasive racial harassment).

---

[6] Ford testified that her supervisor called her a "sorry nigger" after she questioned his directive for her to shovel sand and that he further harassed and discriminated against her by adjusting her work hours.

[7] *Barrow* is an unpublished decision and is thus persuasive, but not binding, authority pursuant to Eleventh Circuit Rule 36-2.

Where, as here, the majority of harassment involved curse words directed at employees regardless of race, the "nigger jokes" and racial slurs, such as "spic," were not directed at Plaintiff, and the racial comment made by a supervisor was not intimidating, threatening or made while berating Plaintiff about his job performance, the facts fall short of severe and pervasive racial harassment. *Compare Miller*, 277 F.3d at 1277 (racially hostile work environment existed where "three to four times a day," foreman called plaintiff "Wetback," "Spic," and "Mexican mother fucker" and foreman and supervisor "used the derogatory names in an intimidating manner, shouting them at [plaintiff] during the course of berating him for his job performance, or when they were "arguing with him," were "mad with him," or were "taunting him....").

Further distinguishing Plaintiff's claim from the claim in *Miller* is that Plaintiff did not complain to anyone about the racial comments or alleged hostile behavior. *Compare Miller*, 277 F.3d at 1274 (plaintiff's foreman continued to refer to him as "wetback," "spic," and "Mexican motherfucker," even though plaintiff had complained about the name-calling, and management had discussed the complaint with plaintiff's foreman and co-workers). The Eleventh Circuit has stressed that "it is repeated incidents of verbal harassment that continue despite the employee's objections that are indicative of a hostile work environment." *Miller*, 277 F.3d at 1274.

Applying the objective standard and considering all the relevant factors, the incidents Plaintiff complains of are not sufficiently severe or pervasive to establish actionable racial harassment. Accordingly, Defendant's motion for summary judgment on Plaintiff's hostile work environment claim is **GRANTED**.

## 2.   Discriminatory Discharge

A plaintiff may establish a *prima facie* case of discrimination in three ways: (1) by

presenting direct evidence of discriminatory intent; (2) by meeting the test set forth in *McDonnell Douglas* as applied to circumstantial evidence; or (3) by demonstrating through statistics a pattern of discrimination. *Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1330 (11th Cir. 1998) (citation omitted). The analytical framework and burden of production varies depending on the method of proof chosen. *Id.*[8]

<u>Direct Evidence</u>

Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption. *Carter v. City of Miami,* 870 F.2d 578, 580-81 (11th Cir. 1989). "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the [protected classification] are direct evidence of discrimination." *Scott v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1227 (11th Cir. 2002) (quoting *Damon v. Fleming*

---

[8] To establish a "pattern or practice" claim of disparate treatment, Plaintiff must show that intentional discrimination was the employer's "standard operating procedure." *Cooper v. Southern Company,* 390 F.3d 695, 716 (11th Cir. 2004) (citations omitted). Plaintiff can prove that discrimination was the standard operating procedure through a combination of "statistics and anecdotes." *Id.* "To meet his burden of proof, [Plaintiff] must prove . . . by a preponderance of the evidence that . . . discrimination [is] . . . the regular rather than unusual practice." *Id.* (quotations and citations omitted). In determining pattern or practice liability, Plaintiff is not required to prove that any particular employee was a victim of the pattern or practice, rather, he need only establish a *prima facie* case that such a policy existed. *E.E.O.C. v. Joe's Stone Crab, Inc.,* 220 F.3d 1263, 1287-88 (11th Cir. 2000). Once this pattern or practice is established, the burden of proof shifts to Defendant to demonstrate Plaintiff's showing of discrimination is either inaccurate or insignificant. *Id.* If Defendant fails to rebut Plaintiff's *prima facie* case, the resulting finding of a discriminatory pattern or practice may give rise to an inference that all persons subject to the policy were its victims and are entitled to appropriate remedies. *Id.*

This Court previously held that, albeit minimally, Plaintiff has alleged a pattern or practice claim of discrimination. Specifically, in the Second Amended Complaint, Plaintiff alleges "defendant has refused to contract with plaintiffs on the same basis as it does with white non-Hispanic persons, has discriminated against them in contracting because of their race, ancestry, and ethnicity, has engaged in a pattern or practice of discrimination against plaintiffs, and has retaliated against them because they opposed discrimination and asserted their claims for equal rights, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981." (Dkt. 114, p. 33). Plaintiff has not alleged a pattern or practice case involving a hostile work environment theory of race discrimination. (See generally, Dkts. 114, 213). Notably, the Eleventh Circuit has observed that "pattern and practice framework is inherently ill-suited to cases which plaintiffs allege "individualized actions taken against them" such as "constructive discharge and hostile environment cases." *Hipp v. Liberty National Life Ins. Co.,* 252 F.3d 1208, 1229 n. 29 (11th Cir. 2001).

In its motion for summary judgment, Defendant does not challenge Plaintiff's claim that Defendant maintained a pattern or policy of discrimination. Accordingly, this theory of discrimination will not be addressed.

*Supermkts. of Fla., Inc.,* 196 F.3d 1354, 1359 (11th Cir. 1999)).  If a plaintiff provides direct evidence of discriminatory intent, the employer must then prove by a preponderance of the evidence that the same employment decision would have been made in the absence of the discriminatory intent. *Standard,* 161 F.3d at 1330.  Remarks by non-decisionmakers or remarks unrelated to the decision-making process do not constitute direct evidence of discrimination. *E.E.O.C. v. Alton Packaging Corp.,* 901 F.2d 920, 924 (11th Cir. 1990).

In support of his discrimination claim, Plaintiff submits the testimony of Angria Walker, who heard Glor tell Overcash that they needed to "lay some of them niggers off."  Viewing this evidence in the light most favorable to Plaintiff, Glor made the comment within five days of his decision to terminate Plaintiff and two other African American workers on July 31, 2000. [9]

Although a close call, this evidence falls short of direct evidence of discrimination.  While Glor was the relevant decisionmaker and the comment relates to his decision to terminate African American employees, the comment does not relate directly to Glor's decision to terminate Plaintiff. "To be direct evidence, the remark must indicate that the *employment decision in question* was motivated by race." *Scott,* 295 F.3d at 1227 (emphasis added); *see also Cooper v. Southern Company*, 390 F.3d 695, 724 n.15 (11th Cir. 2004) ("[d]irect evident is evidence which itself proves the existence of discrimination and does not require inference or interpretation, as for example a

---

[9] Plaintiff also submitted the testimony of Terry Overcash, who testified that he "believed" Glor said he needed "to get rid of some of these niggers."  Overcash could not recall when Glor made the comment and his testimony regarding Glor's use of the term "nigger" was somewhat inconsistent.
> Q: He [Glor] did say something like you need to get rid of some of these niggers?
> A: I believe so.
> Q:  Did Mr. Glore [sic] ever use that term nigger?
> A:  Not that I recall.
(Overcash Depo., p. 147).

frank admission from a manager that he refused to hire an applicant because he was black or because she was female").

### Circumstantial Evidence of Discrimination

Even if Glor's comment does not constitute direct evidence, the comment is circumstantial evidence supporting Plaintiff's claim of discriminatory discharge. When a plaintiff offers circumstantial evidence to prove a discrimination claim, the Court applies the analytical framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff must first establish a *prima facie* case of discrimination. The establishment of a *prima facie* case creates a presumption of discrimination. The employer must then offer legitimate, nondiscriminatory reasons for the employment action to rebut the presumption. If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual. *Id.* at 802-04.

To establish a *prima facie* case of discriminatory discharge via circumstantial evidence where, as here, the discharge is part of a reduction in force, Plaintiff must establish (1) he is a member of a protected class and was discharged; (2) he was qualified for his own position or to assume another position at the time of discharge; and (3) sufficient evidence from which a rational fact finder could conclude that his employer intended to discriminate against him in making the discharge decision. *See Standard,* 161 F.3d at 1331; *see also, Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185 (11th Cir. 1984).[10]

---

[10] Both Title VII and § 1981 prohibit an employer from discharging an employee on the basis of race. Both statutes require the same proof to warrant liability. *See Standard,* 161 F.3d at 1330. The elements of a *prima facie* case for discriminatory discharge vary slightly depending on the allegations of discrimination. As a general rule, however,

Plaintiff has established a *prima facie* case of discrimination as he has submitted evidence demonstrating that he is a member of a protected class, he was qualified for his position, and his discharge occurred under circumstances giving rise to an inference of discrimination. Walker's testimony that Glor told Overcash they needed to "lay some of them niggers off," if believed by the jury, is circumstantial evidence that Glor, the supervisor who terminated Plaintiff, acted with discriminatory animus. Viewing this evidence in the light most favorable to Plaintiff, Glor's comment is both temporally relevant, as it was made within five days of Plaintiff's discharge, and directly related to his employment decision to terminate African American employees. Moreover, the comment included a racial slur directed at Plaintiff's protected characteristic. This evidence, in combination with the other circumstantial evidence submitted by Plaintiff, is sufficient evidence from which a rational fact finder could conclude that Glor intended to discriminate against him in making the discharge decision. *See Standard*, 161 F.3d 1331. Accordingly, Plaintiff has established a *prima facie* case of discriminatory discharge.

Glor's comment also raises a question of fact as to whether Defendant's legitimate business reason for terminating Plaintiff, namely, a reduction in force and dissolution of Weaver's crew, was pretextual. *See Reeves v. Sanderson Plumbing*, 530 U.S. 133, 143 (2000) (in determining pretext,

---

demonstrating a *prima-facie* case is not onerous, as it requires only that the "plaintiff establish facts adequate to permit an inference of discrimination." *See Nix*, 738 F.2d at 1185 (the *prima facie* case method was "never intended to be rigid, mechanistic, or ritualistic") (citations omitted), *see also Herawi v. State of Alabama Dept. of Forensic Sciences,* 311 F. Supp. 2d 1335, 1347 (M.D. Ala. 2004) ([d]emonstrating a *prima-facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination"). There are various ways to raise the inference of discrimination other than showing that a similarly situated individual from outside the protected class was treated differently. *See e.g., Howard v. Roadway Exp., Inc.,* 726 F.2d 1529, 1534 (11th Cir. 1984) (rejecting the argument that black plaintiff could not establish *prima-facie* case of discriminatory discharge because she was replaced by another black person); *see also Watkins v. Sverdrup Tech., Inc.,* 153 F.3d 1308, 1314 (11th Cir. 1998) (in discriminatory discharge based on age, plaintiff need not establish that employer replaced plaintiff with a younger employee; rather, it is sufficient that plaintiff produce "evidence by which a fact finder reasonably could conclude that the employer intended to discriminate on the basis of age in reaching [the termination] decision").

the trier of fact considers all evidence offered, including "evidence establishing the *prima facie* case

and inferences properly drawn therefrom"). While Defendant calls into question Walker's

credibility, credibility determinations, weighing of evidence, and drawing of legitimate inferences

from the facts are functions reserved for the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

257 (1986).

Defendant's contention that this Court should presume Glor did not act out of discriminatory

animus in firing Plaintiff pursuant to the "same actor" theory is not persuasive. The Eleventh

Circuit has recognized a permissible, but not mandatory, inference that the decisionmaker acted

without discriminatory intent in cases where a defendant presents evidence that the hirer and firer

are the same individual and the termination of employment occurred within a relatively short time

following the hiring. *Williams v. Vitro Services Corp.*, 144 F.3d 1438, 1442-43 (11th Cir. 1998)

(stressing that "within the [employment discrimination] burden-shifting framework . . . this

inference is a permissible- not a mandatory - inference that a jury may make in deciding whether

intentional discrimination motivated the employer's conduct") "[A] prima facie case plus evidence

permitting disbelief of the employer's proffered reasons equals the plaintiff's entitlement to have

the factfinder decide the ultimate issue of discrimination." *Id.* (citation omitted). Accordingly, "the

jury must measure the strength of the permissible inference of discrimination that can be drawn

from the plaintiff's *prima facie* case along with the evidence that discredits the employer's proffered

explanations for its decision." *Id.* at 1443 ("it is the province of the jury rather than the court . . .

to determine whether the inference generated by 'same actor' evidence is strong enough to outweigh

a plaintiff's evidence of pretext"); *see also, Gilbert v. Walt Disney Parks and Resorts, LLC*, 2005

WL 1863367 * 11 n.10 (M.D. Fla. 2005) (improper to grant summary judgment on the basis that

14

the hirer and firer are the same actor; rather, "same actor" evidence may be considered by the jury in determining pretext issue) (citing *Williams*, 144 F.3d at 1443).

Finally, Glor's comment is distinguishable from racial comments found to be insufficient as circumstantial evidence of pretext. In *Scott,* a co-worker made the comment, "[w]e'll burn his black ass," two and one half years before the plaintiff was terminated. *Scott*, 295 F.3d at 1227-28. While the co-worker ultimately became the plaintiff's supervisor, the court concluded the comment alone failed to create a genuine issue of fact as to pretext because the comment was untimely and unrelated to the termination decision. *Id.* In contrast, Glor's comment was made within five days of Plaintiff's discharge and the comment relates circumstantially to Glor's intent to lay off African American employees. Simply put, Glor's comment that Pavex needed to "lay some of them niggers off" is not a stray remark, or "conversation fragment, devoid of any meaningful context" or "nexus to the employment issues." *Cf. Mayfield v. Patterson Pump Co.*, 101 F.3d 1371 (11th Cir. 1996) (insufficient evidence in support of discriminatory discharge where a supervisor merely used term "nigger" in plaintiff's presence but not in the context of an employment decision). Accordingly, Defendant's motion for summary judgment on Plaintiff's § 1981 discriminatory discharge claim is **DENIED.**[11]

---

[11] In response to Defendant's motion for summary judgment, Plaintiff raises a mixed motive claim. To establish a claim of mixed-motive, a plaintiff may show through circumstantial evidence that unlawful discrimination was a motivating factor in the adverse employment decision. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003). Since Defendant has articulated legitimate non-discriminatory reasons for Plaintiff's termination, Plaintiff must accordingly offer sufficient evidence to create a genuine issue of material fact as to whether another "motivating factor" was Plaintiff's race. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (quotations omitted). Plaintiff has, even in the face of Defendant's legitimate non-discriminatory reasons, offered sufficient circumstantial evidence to create a genuine issue of material fact as to whether his race was a motivating factor in his termination. *Rachid* , 376 F.3d at 315 (an employer's discriminatory comments that relate to job performance and protected characteristic may reasonably be found to establish that the protected characteristic "played a role" in the decision to terminate). It will be for the jury to decide whether legitimate and illegitimate reasons motivated Glor when he terminated Plaintiff. To the extent that Defendant seeks summary judgment on a mixed-motive defense, its motion is denied, as Defendant has not proved by a preponderance of the evidence that Defendant would have terminated Plaintiff even in the absence of bias. *Pulliam v. Tallapoosa County Jail*, 185 F.3d 1182, 1184 (11th Cir. 1999).

### 3.    <u>Intentional Infliction of Emotional Distress</u>

In order to prove a claim for intentional infliction of emotional distress, Plaintiff must establish (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the complained of conduct caused the suffering; and (4) the suffering was severe. *See Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277 (Fla. 1985). Conduct is considered "outrageous" when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 278; *see also Eastern Airlines, Inc. v. King*, 557 So. 2d 574, 576 (Fla. 1990) (citing § 46, Restatement (Second) of Torts (1965)). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Eastern Airlines*, 557 So. 2d at 576 (citing § 46, Restatement (Second) of Torts (1965)).

"The issue of whether or not the activities of the defendant rise to the level of being extreme and outrageous so as to permit a claim of intentional infliction of emotional distress is a legal question in the first instance for the court to decide as a matter of law." *Baker v. Florida National Bank*, 559 So. 2d 284, 287 (Fla. 4th DCA 1990) (citations omitted). Defendant contends summary judgment on Plaintiff's intentional infliction of emotional distress claim is appropriate because the alleged conduct was not sufficiently outrageous and because Defendant cannot be held vicariously liable.

*Extreme or Outrageous Conduct*

The conduct complained of by Plaintiff, while offensive, does not meet the high standard imposed by Florida courts for intentional infliction of emotional distress claims. *See Vance v.*

16

*Southern Bell Telephone and Telegram Company*, 983 F.2d 1573, n.2 and n.7 (11th Cir. 1993); *Williams v. Worldwide Flight Svcs. Inc.*, 877 So. 2d 869 (Fla. 3d DCA 2004); *Lay v. Roux Laboratories Inc.*, 379 So. 2d 451, 452 (Fla. 1st DCA 1980).

In *Vance, Williams* and *Lay*, more severe racially hostile misconduct was deemed insufficient to establish a claim for intentional infliction of emotional distress. In *Vance*, the plaintiff was suspended, her work was sabotaged, she was "intentionally transport[ed] to the wrong hospital during her nervous breakdown in an effort to cause her further trauma," a noose was hung over her work station and her doctor's request to have her transferred to a different department was refused. *Vance*, 983 F.2d at n.2. In *Lay*, the defendant launched vicious verbal attacks on the plaintiff, called plaintiff a "nigger," and threatened her with the loss of her job. *Lay*, 379 So. 2d at 452. In both cases, the conduct was deemed insufficient to constitute a claim for intentional infliction of emotional distress.

More significantly, however, in *Williams*, the plaintiff's *supervisor* called the plaintiff a "nigger" and "monkey," falsely accused the plaintiff of stealing, and constantly threatened plaintiff with termination. *Williams*, 877 So. 2d at 870. The court found that this type of behavior, even when committed by the plaintiff's supervisor, did not rise to the level of atrociousness necessary to constitute intentional infliction of emotional distress. *Id.; see also Vamper v. United Parcel Service, Inc.*, 14 F.Supp.2d 1301, 1306 (S. D. Fla. 1998) (intentional infliction of emotional distress claim dismissed where, among other acts of hostility, *supervisor* told employees false story about plaintiff and referred to plaintiff as a "nigger" in Spanish); *Mundy v. Southern Bell Telephone and Telegraph Co.*, 676 F.2d 503, 504 (11th Cir. 1982) (intentional infliction of emotional distress claim dismissed where plaintiff's *superiors* threatened to "get" plaintiff or destroy his career, transferred

17

him to less desirable job assignments, gave him unfair negative evaluations and refused to approve reimbursement for legitimate business expenses after plaintiff refused to participate in a scheme to falsify expense vouchers).[12]  Plaintiff fails to establish sufficiently outrageous conduct and in turn, fails to establish a *prima facie* case of intentional infliction of emotional distress.[13]  Defendant's motion for summary judgment on Plaintiff's intentional infliction of emotional distress claim is therefore **GRANTED**.  Accordingly, it is

ORDERED AND ADJUDGED that Defendant's Renewed Motion for Summary Judgment as to Plaintiff Carlos Clem (Dkt. 280) is **GRANTED** in part and **DENIED** in part.  Defendant's motion is **GRANTED** as to Plaintiff's hostile work environment and intentional infliction of emotional distress claims and **DENIED** as to Plaintiff's discriminatory discharge claim.

**DONE AND ORDERED** in chambers this _15th_ day of November, 2007.

JAMES D. WHITTEMORE
**United States District Judge**

Copies to:
Counsel of Record

---

[12] Although not binding on this Court, *Upglade v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239 (5th Cir. 1993) is persuasive.  In *Upglade*, the court, interpreting the standards under § 46, Restatement (Second) of Torts, held that a supervisor's conduct, namely calling plaintiff a "wetback" in connection with his job performance, was insufficient to state a claim for intentional infliction of emotional distress.  *Upglade*, 990 F.2d at 243.  The court reasoned that "[l]iability does not extend to mere insults, indignities, threats, annoyances, or petty oppressions." *Id.* (citations omitted).  "Even conduct which may be illegal in an employment context may not be the sort of conduct constituting extreme and outrageous conduct." *Id.* (citations omitted).

[13] Since the alleged conduct is not sufficiently extreme or outrageous, it is unnecessary to address Defendant's contention that it cannot be held vicariously liable.

18